LENNON, MURPHY & PHILLIPS LLC
Attorneys for Plaintiff
SEAWOLF TANKERS INC.
HEIDMAR INC.
Patrick F. Lennon (PL 2162)
Kevin J. Lennon (KL 5072)
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, NY  10170
Tel.    (212) 490-6050
Fax:    (212) 490-6070

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
SEAWOLF TANKERS INC. and          :
HEIDMAR INC.,                     :
                                  :
            Plaintiffs,           :     **ECF CASE**
                                  :
    - against -                   :
                                  :
RIDGEBURY KILO LLC,               :
                                  :
            Defendant,            :
                                  :
DNB BANK ASA, RV4 FLEET           :
FINANCE LLC and RIDGEBURY V4      :
INVESTMENTS LLC,                  :
                                  :
            Garnishees.           :
------------------------------------------------------X

## VERIFIED COMPLAINT

Plaintiffs, SEAWOLF TANKERS INC. (hereinafter referred to as "Seawolf") and HEIDMAR INC. (hereinafter referred to as "Heidmar" and collectively with Seawolf as the "Plaintiffs"), by and through their attorneys, Lennon, Murphy & Phillips, LLC, as and for their Verified Complaint against the Defendant, RIDGEBURY KILO LLC (hereinafter referred to as "Ridgebury Kilo" or Defendant), alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. Jurisdiction over this matter is also present pursuant to the Federal Arbitration Act, 9 United States Code § 1 *et seq.*, and also this Court's federal question jurisdiction, 28 United States Code § 1331.

2. At all times material to this action, Seawolf was, and still is, a foreign company duly organized and operating pursuant to Marshall Islands law.

3. At all times material to this action, Heidmar was, and still is, a foreign company duly organized and operating pursuant to Marshall Islands law.

4. Upon information and belief, Ridgebury Kilo was, and still is, a Special Purpose Vehicle ("SPV") formed as a foreign corporation or other business entity organized under and existing by virtue of foreign law, with a place of business at Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro, Marshall Islands MH 96960 and is the registered owner of the commercial motor tanker "RIDGEBURY PROGRESS" (now named "STRIBORG" since being sold by Ridgebury Kilo on July 2, 2020) (IMO No. 9180152) (hereinafter referred to as the "Vessel").

5. Upon information and belief, garnishee RV4 Fleet Finance LLC (hereinafter referred to as "RV4 Fleet") was, and still is, an SPV formed as a foreign corporation or other business entity organized under and existing by virtue of foreign law, with a place of business at Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro, Marshall Islands MH 96960 and is the 100% owner of Ridgebury Kilo, the borrower under a Facility Agreement dated on or about March 2, 2018, and the holder of a bank account at DnB Bank ASA situated in New York, New York.

6. Upon information and belief, garnishee Ridgebury V4 Investments LLC (hereinafter referred to as "Ridgebury Investments") was, and still is, an SPV formed as a foreign corporation or other business entity organized under and existing by virtue of foreign law, with a place of business at Trust Company Complex, Ajeltake Island, Ajeltake Road, Majuro, Marshall Islands MH 96960 and is the 100% owner of RV4 Fleet.

7. By a pool agreement dated July 31, 2015 between Ridgebury Kilo, Heidmar and Seawolf (hereinafter "Pool Agreement"), Ridgebury Kilo, as Participant, entered the Vessel in the Seawolf Tankers Pool, as Pool Company, that was commercially managed by Heidmar, as Agent. *True and correct copies of the Pool Agreement and Amendments Nos. 1 – 2 thereof are attached hereto as Exhibit 1.*

8. Clause IV (B) (3) of the Pool Agreement obligated Ridgebury Kilo to time charter the Vessel to Seawolf for an initial period of 6 months after which the Charter Party became evergreen. *Exhibit 1.*

9. By Clause IV (B) (1) of the Pool Agreement Ridgebury Kilo agreed to indemnify and hold Heidmar harmless from all consequences or liabilities in complying with orders given to it. *Exhibit 1.*

10. Clause XX of the Pool Agreement provides that English law governs the Pool Agreement and that any dispute arising in connection with the interpretation or fulfillment of the Pool Agreement shall be referred to arbitration in London. *Exhibit 1.*

11. By a time charter party dated July 31, 2015 between Ridgebury Kilo and Seawolf (hereinafter "Charter Party"), Seawolf time chartered the Vessel from Ridgebury Kilo. *True and correct copies of the Charter Party, Addendum No. 1 and Amendments Nos. 1 – 3 thereof are attached hereto as Exhibit 2.*

12. Clause 1 of the Charter Party – *Description and Condition of the Vessel* – obligated Ridgebury Kilo to provide to Seawolf a vessel, on delivery and throughout the duration of the Charter Party, that was fit in every way for service under the Charter Party including but not limited to:

- in every way fit to carry crude petroleum and/or its products;

- tight, staunch, strong, in good order and condition, and in every way fit for the service, with her machinery, boilers, hull and other equipment (including but not limited to hull stress calculator and radar) in a good and efficient state;

- with tanks, valves and pipelines oil-tight;

- in every way fitted for burning at sea – fuel oil with a maximum viscosity of 380 Centistokes at 50 degrees Centigrade/any commercial grade of fueloil ("ACGFO") for main propulsion and for auxiliaries in port - marine diesel oil/ACGFO for auxiliaries.

*Exhibit 2.*

13. Clause 2 of the Charter Party – *Shipboard Personnel and their Duties* – obligated Ridgebury Kilo to, amongst other things, prosecute all voyages with utmost despatch. *Exhibit 2.*

14. Clause 3 of the Charter Party – *Duty to Maintain* – provides as follows: "*Owners shall, whenever the passage of time, wear and tear or any event (whether or not coming within Clause 27 hereof) requires steps to be taken to maintain or restore the conditions stipulated in Clauses 1 and 2(a), exercise due diligence so to maintain or restore the vessel.*" *Exhibit 2.*

15. Clause 9 of the Charter Party – *Payment of Hire* – as amended by Amendment No. 2, directed Seawolf to remit hire payments to Ridgebury Kilo under the Charter Party to an

4

account in the name of RV4 Fleet held at DnB Bank ASA situated in New York, New York. *Exhibit 2[1]*.

16. Upon information and belief, RV4 Fleet is the 100% owner of Ridgebury Kilo, the registered owner of the Vessel.

17. Upon further information and belief, RV4 Fleet is also the 100% owner of three other SPVs which are or were the registered owners of other vessels within the Ridgebury Tankers shipowning group as follows:

- M/T RIDGEBURY PIONEER owned by Ridgebury Lima LLC ("Ridgebury Lima") from 10 November 2015 until 9 May 2018

- M/T RIDGEBURY PRIDE owned by Ridgebury Juliet LLC ("Ridgebury Juliet") from 19 October 2015 until 29 March 2020;

- M/T RIDGEBURY PURPOSE owned by Ridgebury Mike LLC ("Ridgebury Mike") since 16 July 2015 and continuing.

Along with the M/T RIDGEBURY PROGRESS, all such vessels (collectively referred to as the "Ridgebury Investments Fleet") had pool earnings remitted to the bank account held by garnishee RV4 Fleet at garnishee DnB Bank ASA within this District.

18. Upon further information and belief, by a Facility Agreement dated on or about March 2, 2018, RV4 Fleet, as Borrower, Ridgebury Investments, as Parent Guarantor, and Ridgebury Kilo (along with Ridgebury Lima, Ridgebury Juliet and Ridgebury Mike), as Owner Guarantors, borrowed money from Macquarie Factoring (UK) Limited, which registered first preferred mortgages against the Vessel and the other vessels from the Ridgebury Investments

---

[1] The RV4 Fleet account details at DnB ASA have been redacted to prevent disclosure of sensitive financial information.

Fleet. *True and correct copies of the First Preferred Mortgage dated March 2, 2018 and the Facility Agreement with Macquarie Factoring (UK) Limited are attached hereto as Exhibit 3.*

19. During the course of the Charter Party, Seawolf has remitted pool earnings to Ridgebury Kilo into the bank account held by garnishee RV4 Fleet at garnishee DnB Bank ASA. *True and correct copies of statements recording such payments made to the RV4 Fleet bank account are attached as Exhibit 1 to Affidavit of Kevin J. Lennon in Support of Prayer for Maritime Attachment*[2].

20. Clause 27(c) of the Charter Party – Exceptions – provided that Clause 27(a) shall not apply to, or affect any liability of Ridgebury Kilo or the Vessel in respect of "... *(ii) any claim (whether brought by Charterers or any other person) arising out of any loss of or damage to or in connection with cargo*" and that all such claims shall be subject to the Hague-Visby Rules or the Hague Rules or the Hamburg Rules or the Hamburg Rules, as the case may be. *Exhibit 2*.

21. Clause 86 of the Rider Clauses to the Charter Party provides that English law governs the Charter Party and that all disputes arising under or in connection with it shall be referred to arbitration in London. *Exhibit 2.*

22. Pursuant to the terms of the Pool Agreement and the Charter Party, on or shortly after July 31, 2015 the Vessel was delivered by Ridgebury Kilo into the Seawolf Tankers Pool and into the time charter service with Seawolf.

23. By a voyage charter party dated November 20, 2019 entered into between Seawolf and Laurel Shipping LLC ("Laurel") the Vessel was sub-chartered to Laurel for the

---

[2] The RV4 Fleet account details at DnB ASA have been redacted to prevent disclosure of sensitive financial information.

carriage of fuel oil from the US Gulf and/or the Bahamas and/or the Caribbean to West Coast India or Singapore / Japan range.

24. Under the aforesaid voyage charter party, on December 28, 2019 Laurel ordered the Vessel to load cargo at St. Croix, U.S. Virgin Islands, and then Freeport, Bahamas. The same day the Vessel tendered Notice of Readiness at St. Croix and loaded 1,487,840.66 bbls of fuel oil from December 28-31, 2019.

25. On January 4, 2020 the Vessel arrived at Freeport, Bahamas and tendered Notice of Readiness on arrival. She then loaded a further 1,066,273.75 bbls of fuel oil from January 6-16, 2020.

26. On January 16, 2020 three bills of lading for the cargo loaded aboard the Vessel were issued on behalf of the Master / Ridgebury Kilo, with Freepoint Commodities LLC named as shippers and for delivery to the order of Freepoint Commodities Singapore Pte. Ltd at Singapore and/or Malaysia.

27. On January 20, 2020 Laurel issued discharge orders to the Vessel's Master/Owners for cargo delivery at Malaysia / Singapore, Tanjung Pelapas STS.

28. On January 24, 2020 the Vessel's Master advised Laurel that all was going well and weather permitting the Vessel's ETA at Singapore, Tanjung Pelapas STS would be the beginning of March. However, the Vessel did not reach Singapore until April 29th, some 50 – 60 days late and after suffering main engine problems that resulted in 11 different stoppages.

29. The first stoppage was two weeks into the laden voyage. On January 28, 2020, the Chief Engineer advised that the scavenging air space of the main engine on cylinders nos. 1 and 7 was overheating and that this would require a stoppage of the main engine to carry out repairs, and replacement of piston rings and possibly also overhauling of the cylinders.

30. On January 30, 2020, the Vessel stopped for a period of about 6 hours to investigate and carry out necessary repairs to the main engine.

31. On February 3, 2020, the Master reported that the Vessel was again experiencing high temperature of the scavenging air space of the main engine on cylinder no. 6. The vessel had to stop in the mid-South Atlantic between 2100 on February 3, 2020 and 1200 on February 4, 2020 to investigate and carry out further repairs.

32. On February 7, 2020 the Vessel had to stop due to continuing high temperatures of the scavenging air space, this time on cylinders nos. 1 and 3. It took between 1200 on February 7, 2020 and 1400 on February 8, 2020 to investigate and carry out further repairs.

33. At or about that time it became necessary for the Vessel to receive critical spares for further main engine repairs, and for service engineers to attend the Vessel to carry out repairs to the no. 2 turbocharger which had also been damaged. The Master advised that the Vessel would be unable to continue the voyage without such repairs and so deviated the Vessel north to St Helena at 17.48 on February 10, 2020. In the event the Vessel remained at St Helena from 1400 on February 13, 2020 until 1200 on February 20, 2020 receiving the spares and technicians and carrying out repairs and tests.

34. Four days after departing St Helena the Vessel had to stop once again due to high temperature of the scavenging air on cylinder no. 3. The Vessel stopped off south-western Africa between 1712 on February 24, 2020 and 0212 on February 25, 2020 to carry out further repairs.

35. The Vessel had to stop again the day after resumption of the voyage due to high temperature of the scavenging air on cylinder no. 1 between 1006 and 2206 on February 26, 2020.

36. The Master reported that the Vessel would have to stop off Cape Town, South Africa, to receive more spare parts and carry out additional investigations and repairs to the main engine. The stoppage at Cape Town continued for a period of about 19 days, between 1400 on February 29, 2020 and 1200 on March 18, 2020. During this period the cylinders had to be recalibrated, liners replaced and repairs also had to be carried out to the Alpha lubricator system.

37. Less than a week after resuming the voyage, the Vessel had to stop off Durban, South Africa between 1000 and 2354 on March 23, 2020 due to the continuing issue of high temperature of scavenging air, on cylinders nos. 4 and 7 on this occasion.

38. About a week later the Vessel had to stop off Madagascar between 1000 and 1500 on March 29, 2020 to carry out further repairs.

39. From Madagascar the Vessel proceeded to Port Louis, Mauritius to receive bunkers and additional spare parts and to carry out additional repairs to the main engine, between 2024 on March 31, 2020 and 1000 on April 7, 2020.

40. The Vessel arrived at TG Pelapas on April 24, 2020 and remained at anchor until May 26, 2020 in accordance with orders received from Laurel pending the arrival of other vessels to perform STS cargo operations. Between May 26, 2020 and June 6, 2020, the cargo loaded that had been loaded at St. Croix and Freeport was discharged by STS save for 59,910.052 metric tons and an additional 87,577.619 metric tons of fuel oil was loaded by STS from the m/t "PIS Pioneer. Bills of Lading for the remaining cargo loaded at Freeport on January 16, 2020 and for the cargo loaded at Tanjung Pelepas on June 7, 2020 were issued on behalf of the Master / Ridgebury Kilo, naming Freepoint Singapore Pte Ltd named as shippers and the consignees as "*The order of Freepoint Commodities Singapore Pte. Ltd*" for delivery at China.

41.     Following receipt of orders from Laurel to proceed to Hoizhou, China for discharge, the Vessel had to stop for an eleventh occasion off Singapore between 1936 on June 7, 2020 and 0136 on June 9, 2020, before resuming her voyage to China for discharge.

42.     The Vessel finally arrived at Hoizhou, China on June 18, 2020 where she completed discharge on June 19, 2020.

43.     The Vessel engine problems, stoppages and delays during the voyage were all due to the Vessel's poor state of maintenance and repair in breach of Ridgebury Kilo's Charter Party obligations as aforesaid.

44.     Notably, following the repairs performed during the numerous stoppages, the Vessel was unable to maintain her warranted Charter Party speed of 12.5 knots and instead often proceeded at a speed of between 7 - 9 knots, which constitutes a further breach by Ridgebury Kilo's Charter Party obligations.

45.     Due to the aforesaid stoppages, Seawolf and Heidmar have been presented with a demand letter from Laurel's counsel asserting estimated damages of $19,700,000.00 pursuant to the voyage charter party (the "Laurel Claims").  *A true and correct copy of the Demand Letter from Peter Gutowski, Esq. dated July 22, 2020 is attached hereto as Exhibit 4.*

46.     Under English law, which governs Ridgebury Kilo's Charter Party obligations, Seawolf has an accrued cause of action against Ridgebury Kilo for breach of, *inter alia*, Clauses 1, 2 and 3 of the Charter Party and Seawolf claims damages for the losses suffered including any amounts that Seawolf is required to pay in respect of the Laurel Claims.

47.     Pursuant to Clause 86 of the Charter Party, Seawolf has commenced London arbitration against Ridgebury Kilo claiming, *inter alia*, damages for the losses caused by

Ridgebury Kilo's breaches of the Charter Party and delay in the performance of the voyage and in the delivery of the cargo.

48. Under English law, which governs Ridgebury Kilo's Pool Agreement obligations, Heidmar is entitled to be indemnified and held harmless by Ridgebury Kilo from all consequences and liabilities, including any amounts that Heidmar is held liable to pay in respect of the Laurel Claims.

49. Pursuant to Clause XX of the Pool Agreement, Heidmar and Seawolf have commenced London arbitration against Ridgebury Kilo claiming, *inter alia*, damages for the losses caused by Ridgebury Kilo's breaches of the Pool Agreement and delay in the performance of the voyage and in the delivery of the cargo.

50. On information and belief, Seawolf and Heidmar are likely to incur substantial legal costs (i) defending any legal proceedings brought against them by Laurel and/or the cargo owners and (ii) pursuing the London arbitration proceedings against Ridgebury Kilo. As best as may be presently estimated legal costs at this early stage would be US $1,500,000 in each of the proceedings.

51. On information and belief, the legal costs incurred by Seawolf and Heidmar defending legal proceedings brought by Laurel and/or the cargo owners will be recoverable as damages from Ridgebury Kilo under English law; and the legal costs and arbitral fees incurred by Seawolf and Heidmar pursuing their claims against Ridgebury Mike in the London arbitration proceedings will be recoverable from Ridgebury Mike if the claims are successful.

52. On information and belief, on or about July 2, 2020 Ridgebury Kilo sold and delivered the M/T RIDGEBURY PROGRESS to a Chinese company called Stribog Limited at

11

the port of Singapore for a price of about US$24,000,000. Since that time the M/T RIDGEBURY PROGRESS has remained at anchor off Singapore.

53. On information and belief, the proceeds from the sale of the M/T RIDGEBURY PROGRESS are likely to be held by garnishee RV4 Fleet Finance LLC and/or garnishee Ridgebury V4 Investments LLC and/or garnishee DnB Bank ASA.

54. Ridgebury Kilo cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Ridgebury Kilo has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees which are believed to be due and owing to Ridgebury Kilo.

55. Seawolf and Heidmar seek an Order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Assert Forfeiture Actions ("Supplemental Rule B") attaching, *inter alia*, any assets of Ridgebury Kilo held by any garnishee(s) within the District for the purpose of obtaining personal jurisdiction over the Ridgebury Kilo, and to secure Seawolf's and/or Heidmar's claims as described above.

**WHEREFORE**, Plaintiff prays:

A. That it be awarded judgment against Defendant, Ridgebury Kilo, LLC in the sum of $25,655,000 consisting of $19,700,000 as the principal sum, plus $3,000,000 of estimated recoverable legal costs, plus $2,955,000 representing recoverable interest on the $19,700,000 principal sum for projected 3 years of proceedings at 5% per annum, as costs and interest are routinely awarded in London arbitration;

B.	That process in due form of law issue against the Defendant citing it to appear and answer under oath all and singular the matters alleged in this Verified Complaint, failing which default judgment be entered against it in the sum of $25,655,000;

C.	That since the Defendant cannot be found within this District pursuant to Supplemental Rule B, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of $25,655,000 belonging to, due or being transferred to, from, or for the benefit of the Defendant, including, but not limited to, such property as may be held, received or transferred in Defendant's name, or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of garnishee RV4 Fleet Finance LLC and/or garnishee Ridgebury V4 Investments LLC and/or garnishee DnB Bank ASA, and other banking/financial institutions, and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Rule B answer the matters alleged in the Verified Complaint;

D.	That this Court retain jurisdiction over this matter through the entry of any judgments or awards associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.	That this Court award Plaintiffs their reasonable attorneys' fees and costs incurred in this action; and

F.	That the Plaintiffs be granted such other, further and different relief as the Court may deem just and proper under the circumstances.

Dated:  August 13, 2020

        The Plaintiffs,

        SEAWOLF TANKERS INC.
        HEIDMAR INC.

By:_____
        Patrick F. Lennon (PL 2162)
        Kevin J. Lennon (KL 5072)
        LENNON, MURPHY & PHILLIPS, LLC
        The Gray Bar Building
        420 Lexington Avenue, Suite 300
        New York, NY 10170
        Tel:   (212) 490-6050
        Fax:  (212) 490-6070
        Email:  plennon@lmplaw.net
                klennon@lmplaw.net

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                     )    ss.:    Town of Westport
County of Fairfield  )

1. My name is Patrick F. Lennon.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am a partner in the firm of Lennon, Murphy & Phillips, LLC, attorneys for the Plaintiffs.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiffs is that the Plaintiffs are business organizations with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiffs and agents and/or representatives of the Plaintiffs.

7. I am authorized to make this Verification on behalf of the Plaintiffs.

Dated:     August 13, 2020

_____
Patrick F. Lennon